**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Manley Barton, et al., | No. CV-22-08022-PCT-SPL |
| Plaintiffs, | |
| vs. | **ORDER** |
| Office of Navajo and Hopi Indian Relocation, | |
| Defendant. | |

Before the Court are Plaintiff's Motion for Summary Judgment (Doc. 13) and Defendant's Cross-Motion for Summary Judgment (Doc. 19). Both Motions have been fully briefed.[1] For the reasons that follow, Plaintiff's Motion will be denied and Defendant's Cross-Motion will be granted.[2]

**I.   BACKGROUND**

  **A. The Settlement Act**

The Navajo–Hopi Settlement Act (the "Settlement Act") authorized a court-ordered partition of land previously referred to as the Joint Use Area—which was occupied by both Navajo and Hopi residents—into the Navajo Partitioned Lands ("NPL") and the Hopi Partitioned Lands ("HPL"). *See* Pub. L. No. 93-531, § 12, 88 Stat. 1716

---

[1] Plaintiff attaches six exhibits to his Motion. Because Defendant does not object to the exhibits, the Court considers them as part of the record.

[2] Because it would not assist in resolution of the instant issues, the Court finds the pending motions are suitable for decision without oral argument. *See* LRCiv. 7.2(f); Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

(1974); *Clinton v. Babbitt*, 180 F.3d 1081, 1084 (9th Cir. 1999). The Settlement Act also created what is now the Office of Navajo and Hopi Indian Relocation ("ONHIR") to disburse benefits to assist with the relocation of Navajo and Hopi residents who then occupied land allocated to the other tribe. *Bedoni v. Navajo-Hopi Indian Relocation Comm'n*, 878 F.2d 1119, 1121–22 (9th Cir. 1989).

### B. Factual and Procedural Background

Plaintiff Manley Barton is an enrolled member of the Navajo Nation.[3] (Doc. 1 at 2). Plaintiff filed an Application for Relocation Benefits, which was denied by ONHIR based on a finding that he was not a head of household by the time his HPL residency ended in May 1985. (Doc. 9-1 at 105). Plaintiff appealed, and a hearing was held before an Independent Hearing Officer ("IHO") on October 23, 2015. (Doc. 14 at 2). On January 13, 2016, the IHO denied Plaintiff's appeal and upheld ONHIR's denial of benefits based on a finding that, although Plaintiff became a head of household in 1985, Plaintiff's residence on the HPL ended in 1984. (Doc. 14 at 11; Doc. 9-1 at 47). On February 3, 2016, ONHIR issued Final Agency Action in Plaintiff's case. (Doc. 9-1 at 126). On February 3, 2022, Plaintiff initiated this action seeking judicial review of ONHIR's denial of relocation benefits. (Doc. 1).

## II.   LEGAL STANDARDS

### A. Summary Judgment

Generally, summary judgment should be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When conducting judicial review of an administrative agency's action, "there are no disputed facts that the district court must resolve." *Occidental Eng'g Co. v. Immigr. & Naturalization Serv.*, 753 F.2d 766, 769 (9th Cir. 1985). Rather, "the function of the district court is to determine whether or not as a matter of law the

---

[3] Marcella Barton was also named as a Plaintiff in the Complaint (Doc. 1), but she died on October 18, 2021 (Doc. 15), and the Court granted the motion to withdraw her as a party (Doc. 18).

evidence in the administrative record permitted the agency to make the decision it did." *Id.* Summary judgment is therefore "an appropriate mechanism for deciding the legal question of whether [an] agency could reasonably have found the facts as it did." *Id.* at 770.

### B. APA Standards of Review

The Court's review of the IHO's decision under the Settlement Act is governed by the Administrative Procedure Act ("APA"). *See Hopi Tribe v. Navajo Tribe*, 46 F.3d 908, 914 (9th Cir. 1995). Under the APA, the Court must uphold agency action unless it was "arbitrary, capricious, an abuse of discretion, not in accordance with law, or unsupported by substantial evidence." *Bedoni*, 878 F.2d at 1122.

An ONHIR decision satisfies the "arbitrary and capricious" standard if "the agency examine[s] the relevant data and articulate[s] a satisfactory explanation for its action, including a rational connection between the facts found and the choice made." *Hopi Tribe*, 46 F.3d at 914 (internal quotation marks omitted). This scope of review is narrow, and the Court may not "substitute its judgment for that of the agency." *Id.* (internal quotation marks omitted). Still, a decision is arbitrary and capricious "if the agency . . . entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Likewise, if an agency "fails to follow its own precedent or fails to give a sufficient explanation for failing to do so," its decision is arbitrary and capricious. *Andrzejewski v. Fed. Aviation Admin.*, 563 F.3d 796, 799 (9th Cir. 2009).

An agency's decision satisfies the "substantial evidence" standard if it is supported by "such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995). The standard requires "more than a mere scintilla but less than a preponderance" of evidence. *Id.* The IHO may "draw inferences logically flowing from the evidence." *Gallant v. Heckler*, 753

3

F.2d 1450, 1453 (9th Cir. 1984). "Where evidence is susceptible of more than one rational interpretation," the IHO's decision must be upheld. *Id.*

### C. The Settlement Act and Associated Regulations

A Navajo applicant is eligible for benefits under the Settlement Act if he was a legal resident of the HPL as of December 22, 1974 and was a head of household at the time he moved off of the HPL. 25 C.F.R. §§ 700.147(a), 700.69(c); *Begay v. Off. of Navajo & Hopi Indian Relocation*, 305 F. Supp. 3d 1040, 1044 (D. Ariz. 2018), *aff'd*, *Begay v. Off. of Navajo & Hopi Indian Relocation*, 770 F. App'x 801, 802 (9th Cir. 2019). The applicant bears the burden of proving both the residency and head-of-household elements. 25 C.F.R. § 700.147(b). Only the residency element is at issue in this case, as the parties agree that Plaintiff became a head of household in 1985. (Doc. 13 at 7; Doc 19 at 10).

Under the applicable regulations, determining an applicant's residence "requires an examination of a person's intent to reside combined with manifestations of that intent." 49 Fed. Reg. 22,278; *see also Charles v. Off. of Navajo & Hopi Indian Relocation*, 774 Fed. Appx. 389, 390 (9th Cir. 2019). Such manifestations of intent may include ownership of livestock, ownership of improvements, grazing permits, livestock sales receipts, homesite leases, public health records, medical records, school records, military records, employment records, mailing address records, banking records, driver's license records, voting records, home ownership or rental off the Joint Use Area, census data, Social Security records, marital records, court records, birth records, the Joint Use Area roster, and any other relevant data. 49 Fed. Reg. 22,278. "An individual who was, on December 22, 1974, away from the land partitioned to the Tribe of which he/she is not a member may still be able to prove legal residency." 49 Fed. Reg. 22,277.

///
///
///
///

## III. DISCUSSION

Plaintiff presents an argument that he became a head of household in 1985—an argument that is entirely in alignment with the IHO's decision and therefore cannot be grounds for reversal.[4] (*See* Doc. 9-1 at 49–50 (finding that Plaintiff earned $4,105 from two jobs in 1985)). Plaintiff also argues that the IHO's finding that his residency on the HPL ended in 1984 was arbitrary and capricious and unsupported by substantial evidence, and that the decision is inconsistent with ONHIR's federal trust responsibility. The Court will address those arguments in turn.

### A. Residency Finding

Plaintiff argues that the IHO's residency determination was flawed for several reasons. First, he argues that the decision was arbitrary and capricious because the IHO disregarded ONHIR's "temporarily away" policy. The "temporarily away" policy provides that if a Navajo applicant temporarily left the HPL to pursue education, employment, or other opportunities, he "can still establish his legal residency by showing substantial and recurring contacts with his home within the HPL." *Tso v. Off. of Navajo & Hopi Indian Relocation*, No. CV-17-08183-PCT-JJT, 2019 WL 1877360, at *4 (D. Ariz. Apr. 26, 2019); *see also Akee v. Off. of Navajo & Hopi Indian Relocation*, 907 F. Supp. 315, 317, 319 (D. Ariz. 1995). Here, the IHO *did* apply the temporarily away policy in determining that Plaintiff's HPL residency continued until 1984. The IHO concluded that Plaintiff was a legal resident of the HPL on December 22, 1974—even though he lived with his parents and sister in Holbrook, where they went to school and worked—because the family maintained regular contact with Plaintiff's grandparents' home in Jeddito on the HPL. (Doc. 9-1 at 52). But, the IHO found, Plaintiff's "return visits to Jeddito were, at best, social and certainly infrequent from 1984 on" such that they could not be considered substantial and recurring contacts. (Doc. 9-1 at 54).

It is therefore clear that the IHO did not disregard the temporarily away policy,

---

[4] Plaintiff also spends more than a page of his Reply brief on an argument related to Marcella Barton, whose claim was withdrawn following her death. (Doc. 28 at 10–11).

5

and this Court further finds substantial evidence to support the IHO's conclusion that the policy no longer applied to maintain Plaintiff's HPL residence from 1984 on. As the IHO noted in his decision, after graduating high school in May 1985, Plaintiff worked two jobs, as a gas station attendant and a construction worker, which required him to travel throughout northern Arizona. (Doc. 9-1 at 54–55). Citing testimony from the hearing, the IHO further stated that Plaintiff's return visits were "limited to ceremonies and social interaction with family members," (Doc. 9-1 at 55), which is insufficient to establish residency under the temporarily away policy. *Tso*, 2019 WL 1877360, at *5. Even if some testimony could support a contrary conclusion, the IHO reasonably concluded from the evidence in the record and logical inferences flowing therefrom that by 1985, Plaintiff's contacts with the HPL site were not substantial and recurring.

Moreover, the IHO's conclusion that Plaintiff's HPL residence ended in 1984 ultimately was not based on the frequency of Plaintiff's contacts but on the determination that his family's HPL site could no longer be claimed as a residence after his grandparents moved from the HPL to the NPL in 1984. In the Conclusions of Law section, the IHO stated that Plaintiff's "claim to legal residence in the area of the Jeddito Chapter where [his] grandparents lived [on the HPL] . . . ended in 1984 when [his] grandparents relocated to the NPL portion of Jeddito Chapter." (Doc. 9-1 at 52; *see also* Doc. 9-1 at 56 ("Neither of the applicant's [sic] could therefore be considered 'temporarily away' from the HPL home once it ceased being a part of their family's legal residence . . . .")). Plaintiff argues that this aspect of the decision was arbitrary and capricious because it fails to properly apply ONHIR's "customary use area" policy.

Though the "customary use area" policy is not codified in federal law, ONHIR has historically recognized that "the division of a traditional, customary use area [is] an adverse relocation outcome, even if only part of the customary use area was awarded to the Tribe of which he/she is not a member, so long as there is evidence of continuous use of the *entire* area as of the date of the Act." *Begay*, 305 F. Supp. 3d at 1048 (internal quotation marks omitted). A person maintains a traditional use area "on property that

spanned the partition line[ ] by dedicating a portion of each year to each homesite, depending on the season of the year." *Id.* (internal quotation marks omitted). ONHIR "must recognize legal residence at a traditional use area that had been maintained for an extended period of time and where the pattern of residence by the applicant in such a traditional use area was *continuous*." *Id.* (internal quotation marks omitted). In addition, "both camps must have a homesite structure in order to establish 'dual residency'"—a requirement that "is consistent with the 'house-for-house' scheme established by Congress in providing for relocation benefits." *Id.* at 1048 & n.6 (citing 25 U.S.C. § 640d-14(a).

Here, the facts simply do not fit the mold of a customary use area. Plaintiff asserts that his "family had homesites on both the HPL and the NPL," but there is no evidence that they dedicated a portion of the year to each homesite depending on the season, or that there was any continuous pattern of residence over the traditional use area through 1986. (Doc. 13 at 12). Instead, Plaintiff acknowledges that "[o]nce the grandparents moved to the NPL in 1984, the family continued to use the HPL homesite for family gatherings, ceremonies[,] and for grazing until at least 1986." (Doc. 13 at 12). The record evidence sufficiently supports the IHO's findings that Plaintiff's grandparents moved to the NPL permanently in 1984 and that no one in the family continuously lived on the HPL after that time, even though the HPL site was used for other activities, including penning livestock and holding religious ceremonies. This is simply not a pattern of use consistent with a customary use area. *See Begay*, 770 F. App'x at 802 (finding ONHIR's denial of benefits was not arbitrary and capricious where applicant's family resided on the HPL for several years, then moved "nearly full-time" to the NPL while still using a cornfield on the HPL). Accordingly, "the ONHIR's decision here was neither contrary to [the customary use area policy], nor was it otherwise arbitrary or capricious." *Id.*

Finally, Plaintiff argues that the IHO's finding that Plaintiff's HPL residency ended in 1984, rather than 1986, is unsupported by substantial evidence. Plaintiff asserts that the IHO "ignor[ed] the uncontroverted testimony of all the witnesses that [Plaintiff's]

7

family[ ] continued to occupy their hogan and the rest of their HPL homesite until at least when [Plaintiff's mother] relocated in July 1986."[5] (Doc. 13 at 7). But Plaintiff does not cite to any testimony in support of that assertion. Upon thorough review of the record, this Court finds *contradictory* testimony that the IHO rationally balanced to conclude that Plaintiff did not reside at the HPL homesite after 1984. To be sure, Plaintiff himself testified that he, his mother, and his sister returned to the HPL site "all the time . . . for ceremonies and for living in there" after his grandparents relocated. (Doc. 9 at 79, 83). On the other hand, three of his relatives testified that the HPL site was used for religious ceremonies and keeping livestock after the grandparents' relocation, but not that Plaintiff's family lived there after that time.[6] (*See* Doc. 9 at 37–38, 41, 53–55, 63–64, 66–69, 73). In particular, the IHO's decision quoted testimony from Plaintiff's aunt that "we went in and out of there [the HPL hogan] for ceremonies" and that no one "lived" at the HPL homesite after the grandparents' relocation in 1984. (Doc. 9-1 at 55; *see* Doc. 9 at 73). Where there is ambiguous or conflicting evidence, ONHIR is "entitled to resolve [the] ambiguities and conflicts against" the applicant. *Daw v. Off. of Navajo & Hopi Indian Relocation*, No. 20-17261, 2021 WL 4938121, at *2 (9th Cir. Oct. 22, 2021). And

---

[5] Plaintiff also notes that his mother and other relatives were certified for relocation benefits based on later move-off dates from the HPL site. "[W]hile ONHIR must follow its own precedent, this merely requires 'that the agency apply the law consistently to cases with similar material facts; it does not require the agency find the same facts for different parties, in different proceedings, and based on different evidence.'" *Stago v. Off. of Navajo & Hopi Indian Relocation*, 562 F. Supp. 3d 95, 105 (D. Ariz. 2021) (quoting *Daw v. Off. of Navajo & Hopi Indian Relocation*, No. CV-19-08212-PCT-SMB, 2020 WL 5632121, at *4 (D. Ariz. Sept. 21, 2020) (affirming IHO's finding that plaintiff's family ceased use of HPL land prior to passage of the Settlement Act despite IHO's finding in plaintiff's relative's case that the family did not cease use before that time))). Following that principle, Plaintiff's mother's eligibility determination is not determinative of his own eligibility. *See Begay v. Off. of Navajo and Hopi Indian Relocation*, No. 3:20-cv-8057-DJH, 2021 WL 2826125, at *6 (D. Ariz. July 7, 2021) ("Plaintiff cannot use ONHIR's determination of her sister's residency, to estop ONHIR from making her residency determination.").

[6] These family members all testified that Plaintiff, his mother, and his sister lived in a hogan on the HPL during weekends, summers, and holidays—which they undisputedly did prior to 1984—but either did not specify years in which they did so or specified only earlier years. (Doc. 9 at 35, 39, 44–45, 52, 56, 61–62, 65, 69–70). That testimony therefore does not show that Plaintiff was an HPL resident until 1986.

where, as here, the evidence could support either of two inconsistent conclusions, it is not this Court's role to second-guess the IHO's decision. *See id.* at *1 ("It is a fundamental principle that an agency, its experts, and its administrative law judges are better positioned to weigh conflicting evidence than a reviewing court." (internal quotation marks omitted)). There is substantial evidence to support the IHO's conclusion that Plaintiff's HPL residency ended in 1984, so the IHO's decision will not be reversed on this ground.

### B. Federal Trust Responsibility

Plaintiff also argues that ONHIR's denial of benefits violated "its federal trust responsibility to Navajo applicants like [Plaintiff]." (Doc. 13 at 16). The Court is well aware of "the longstanding general trust obligation that has dominated Government interaction with Native Americans" as well as "the many grants of express trustee authority in the Settlement Act." *Bedoni*, 878 F.2d at 1124. But the Court does not see how this bears upon Plaintiffs' individual eligibility under the Settlement Act or this Court's review under the APA. Rather, the Settlement Act places upon ONHIR "an affirmative duty to manage and distribute the funds appropriated pursuant to the Settlement Act such that the displaced families receive[ ] the full benefits authorized for them." *Id.* at 1125. In other words, ONHIR has a duty only to disburse benefits to those authorized to receive them under the Settlement Act. Thus, whether ONHIR has a duty to disburse benefits to Plaintiffs flows from the IHO's decision, but ONHIR's duty to disburse benefits to eligible applicants does not dictate Plaintiffs' eligibility. Because the IHO determined that Plaintiff is not eligible for benefits, and because this Court finds no reversible error in the IHO's decision, ONHIR has no duty to disburse benefits to Plaintiff.

///

///

///

///

9

**IT IS THEREFORE ORDERED:**

1. That Plaintiff's Motion for Summary Judgment (Doc. 13) is **denied**;
2. That Defendant's Cross-Motion for Summary Judgment (Doc. 19) is **granted**;
3. That the Clerk of Court shall enter judgment for Defendant and **terminate** this action.

Dated this 17th day of April, 2023.

Honorable Steven P. Logan
United States District Judge